# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Barry L. Walker, | Civ. No. 20-247 (JRT/BRT) |
| Plaintiff, | |
| v. | **ORDER AND** |
| | **REPORT AND** |
| FMC Rochester, Federal Bureau of | **RECOMMENDATION** |
| Prisons, Kepp, Machutt, and John & Jane | |
| Does #1–10, | |
| Defendants. | |

---

Barry L. Walker, *pro se* Plaintiff.

Friedrich A. P. Siekert, Esq., United States Attorney's Office, counsel for Defendants.

---

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 32), and Plaintiff Barry L. Walker's "Motion to Strike Defendants' Motion to Dismiss (Doc 32) for Failure to Conform to the Local Rules in Both Format and Failure to Meet-And-Confer with the Plaintiff" ("Motion to Strike"). (Doc. No. 42.) For the reasons that follow, Plaintiff's Motion to Strike is denied, and this Court recommends that Defendants' Motion to Dismiss be granted.

## BACKGROUND

Plaintiff filed his Complaint in this matter on January 15, 2020. (Doc. No. 1, Compl.) Therein, Plaintiff asserts federal tort claims for personal injury and medical

malpractice. (Compl. 3.) Plaintiff alleges that on September 3, 2019, he was placed in the Special Housing Unit ("SHU") at Federal Medical Center – Rochester ("FMC-Rochester") by Defendants Kepp and Machutt, who work there as correctional officers. (*Id.* at 4.) While the SHU is used to segregate disruptive inmates, Plaintiff was placed there to ensure he did not consume food prior to an upcoming exam. (*Id.*) Plaintiff claims that there is no difference between the cells used for punitive segregation and the cell he was placed in. (*Id.*) Plaintiff represents that he is a senior citizen and suffers from emphysema, C.O.P.D., bilateral cataracts, and hearing loss. (*Id.*) As a consequence of these conditions, Plaintiff is confined to an electric wheelchair and must continuously use oxygen at a rate of four liters per minute. (*Id.*)

Plaintiff was placed in his SHU cell at the same time as another inmate, Greg Scher, who was also on oxygen.[1] (*Id.* at 5.) Both Plaintiff and Scher's oxygen concentrators required the use of electricity. (*Id.*) Plaintiff states that while there had been an extension cord strung inside the SHU cell for the previous occupant, Defendants removed it before placing Plaintiff and Scher in the cell. (*Id.*) Plaintiff alleges that both Plaintiff and Scher's oxygen concentrators were placed outside the SHU cell, and the air hoses were run under the cell door. (*Id.*) Plaintiff claims that the SHU cell door featured a heavy rubber door sweep designed to prevent inmates from moving items under the door from cell to cell, but in this case interfered with the hoses running to Plaintiff and Scher's

---

[1]    Plaintiff's Complaint refers to a Declaration by Greg Scher, but no such document was ever filed in this matter. (Compl. 4–5.)

oxygen concentrators. (*Id.*) Plaintiff alleges that these circumstances caused him to fall and injure his back. (*Id.*)

Plaintiff believes that he broke his spine, and that he ought to be referred to an orthopedic surgeon for treatment. (*Id.*) Plaintiff asserts that his alleged injury is a direct and proximate result of Defendants' deliberate indifference to his medical needs. (*Id.*) Plaintiff seeks relief in the form of (1) $100,000 in actual damages from each Defendant; (2) $100,000 in punitive damages from each Defendant; (3) an order prohibiting Defendants from retaliating against Plaintiff; and (4) other relief the Court deems appropriate, including court costs and filing fees. (*Id.* at 6.)

On September 18, 2020, Defendants filed a Motion to Dismiss and a Meet and Confer Statement. (Doc. No. 32, Mot. to Dismiss; Doc. No. 35, Meet and Confer Statement.) The latter document indicated that Defendants' counsel "did not meet and confer with Plaintiff as he is incarcerated and time did not permit such a meeting." (Meet and Confer Statement 1.) On September 22, 2020, the Court issued a Briefing Order directing that Plaintiff's response to Defendants' Motion to Dismiss was due by October 22, 2020. (Doc. No. 39.) On October 1, 2020, Plaintiff moved for an extension of time to file that response, which the Court granted in part, extending Plaintiff's deadline to November 23, 2020. (Doc. Nos. 40, 41.) On November 2, 2020, Plaintiff filed the instant Motion to Strike; Plaintiff did not file a response to the Motion to Dismiss. (Doc. No. 42, Mot. to Strike.) On November 12, 2020, Defendants filed a Memorandum in Opposition to the Motion to Strike. (Doc. No. 44, Mem. in Opp'n.)

## ANALYSIS

Defendants move to dismiss Plaintiff's Complaint, arguing that Plaintiff's claims should be dismissed due to lack of jurisdiction, failure to state a claim, and failure to exhaust available administrative remedies before pursuing this action. (Doc. No. 34, Mem. in Supp. of Mot. to Dismiss ("Mem. in Supp.") 2.) Plaintiff did not file a memorandum opposing the Motion to Dismiss; however, Plaintiff moves to strike Defendants' Motion to Dismiss. (*See* Mot. to Strike.) This Court will analyze each of the parties' motions separately.

## I.    Plaintiff's Motion to Strike

The Court first turns to Plaintiff's Motion to Strike. Plaintiff moves to strike Defendants' Motion to Dismiss for failure to conform with the Local Rules, and for failure to meet and confer with Plaintiff in good faith before filing the motion. (Mot. to Strike 2.) Specifically, Plaintiff asserts that the Motion to Dismiss does not have the filer's name, contact information, and bar number (if applicable) set forth at the top left-hand corner of its first page as required of every pleading by the Local Rules. (*Id.* at 3.) Plaintiff also asserts that Defendants' representation in the Meet and Confer Statement that counsel was unable to meet with Plaintiff due to time constraints is inadequate, and suggests that the Court consider sanctions. (*Id.* at 2.) Defendants respond that the Federal Rules of Civil Procedure do not permit a motion to strike a motion to dismiss. (Mem. in Opp'n 2.) Defendants also argue that the Motion to Dismiss fully complied with the Local Rules' formatting requirements, and that their counsel's Meet and Confer

Statement complied or substantially complied with Local Rule 7.1(a). (Mem. in Opp'n 4.) The Court addresses each argument in turn.

### A.    Plaintiff May Not Move to Strike a Motion to Dismiss

The Court first addresses the threshold question of whether a motion to strike a motion to dismiss is permitted under the Federal Rules of Civil Procedure. Rule 12(f) provides that:

> The court may strike *from a pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f) (emphasis added). A Motion to Dismiss, however, is not a pleading. *See* Fed. R. Civ. P. 7(a) (setting forth the types of pleadings allowed under the rules). Accordingly, Rule 12(f) does not apply. Moreover, there are no other provisions in either the Federal Rules of Civil Procedure or the Local Rules that would permit a motion to strike a motion to dismiss. Accordingly, the Court finds that Plaintiff's present Motion to Strike lacks a basis in the applicable rules, and therefore must be denied.[2]

### B.    Compliance with Local Rule 7.1(a)

Plaintiff also claims that Defendants' Meet and Confer statement was inadequate, and that it displayed "disdain for the Plaintiff, his injuries, and his Constitutional rights."

---

[2]    This Court also observes that Defendants' Motion to Dismiss complied with the relevant formatting requirements of the Local Rules.

(Mot. to Strike 2.) Defendants' Meet and Confer Statement represented that defense counsel "did not meet and confer with Plaintiff as he is incarcerated and time did not permit such a meeting." (Doc. No. 35, Meet and Confer Statement 1.) In their opposition to the instant motion, Defendants explain that "[a] plaintiff's incarceration makes it extremely difficult if not impossible for defense counsel to meet and confer with an incarcerated plaintiff . . . especially under time constraints." (Mem. in Opp'n 3.) Defendants note that they were in possession of neither a telephone number nor an e-mail address for Plaintiff, and that they have now sent Plaintiff a letter proposing that the parties stipulate to the dismissal of this action. (*Id.*)

The Court finds that such a limited post-hoc effort does not fully comply with Rule 7.1(a). However, this Court understands that there are unique challenges presented by COVID-19.[3] "[T]his district has previously declined to dismiss a movant's motion for such a failure," finding that whether to consider a motion lays in the discretion of the Court. *Daywitt v. Minnesota Dep't of Human Servs.*, No. 17-CV-5574 (NEB/TNL), 2019 WL 1417451, at *3 (D. Minn. Mar. 29, 2019) (citing *Dutch Lake Holdings, LLC v. Sunnybrook Homeowners Assn, Inc.*, No. 13-cv-538 (JNE), 2013 WL 3338783, at *2 n.1 (D. Minn. July 2, 2013) (unpublished) (declining to dismiss movant's motion for failure to comply with Local Rule 7.1(a)'s meet-and-confer requirement); *First Fin. Sec., Inc. v. Lee*, No. 14-cv-1843 (PJS/SER), 2016 WL 881003, at *7 n.10 (D. Minn. Mar. 8, 2016) (unpublished) (finding that the magistrate judge acted within his discretion in excusing

---

[3]    In the future, the Court expects some additional effort to attempt to comply with the Local Rules as they relate to meeting and conferring with incarcerated parties.

movant's failure to meet and confer and ruling on the merits of the motion). Plaintiff has cited no cases to the contrary.

The Court, in its discretion, does not believe that the remedy of striking or denying Defendants' Motion to Dismiss altogether is merited due solely to Defendants' failure to fully satisfy the Local Rules' meet and confer requirement. Accordingly, for the foregoing reasons, Plaintiff's "Motion to Strike Defendants' Motion to Dismiss (Doc 32) for Failure to Conform to the Local Rules in Both Format and Failure to Meet-And-Confer with the Plaintiff" (Doc. No. 42) is denied.

## II.    Defendants' Motion to Dismiss

This Court next turns to Defendants' Motion to Dismiss. As explained above, other than his separate Motion to Strike, Plaintiff did not file an opposition to the Motion to Dismiss. Defendants argue that Plaintiff's claims for medical malpractice and personal injury should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim. (Mem. in Supp. 8–11.) Defendants further argue that Plaintiff's implied "deliberate indifference" claim should be dismissed for lack of jurisdiction and for failure to state a claim. (*Id.* at 11–14.) Finally, Defendants argue that should any of Plaintiff's claims survive, they must be dismissed because Plaintiff failed to exhaust his administrative remedies. (*Id.* at 14–17.) For the reasons that follow, this Court recommends that Defendants' Motion to Dismiss be granted, and Plaintiff's Complaint be dismissed.

A.    **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject-matter jurisdiction. A party contesting subject-matter jurisdiction may mount either a facial challenge or a factual challenge to a court's jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990). On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.* at 729 & n.6. On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Id.* "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at 730. In determining whether the plaintiff has sustained that burden, a court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, "the Court may not supply additional facts or fashion a legal theory that assumes facts that have not been pleaded." *Benjamin v. Experian Info. Sols., Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at *2 (D. Minn. July 15, 2014) (citing *Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004)).

Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Thus, the Court in examining a motion to dismiss must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558. Pro se complaints, however, "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

**B.    Plaintiff's Medical Malpractice and Personal Injury Claims**

Defendants argue that Plaintiff's claims for medical malpractice and personal injury should be dismissed because the Court lacks jurisdiction to hear either claim because Defendants are immune to suit, and because Plaintiff failed to comply with the Federal Tort Claims Act's ("FTCA") presentment requirement. (Mem. in Supp. 8–9.) Defendants further argue that Plaintiff's medical malpractice claim is barred because Plaintiff failed to comply with the requirements of Minn. Stat. § 145.682.[4] (*Id.* at 9.)

---

[4]    Defendants also assert that punitive damages and injunctive relief are not available to Plaintiff in this matter. (Mem. in Supp. 9.) Because this Court finds that Plaintiff's claims should be dismissed on other grounds, it declines to address this argument at this time.

i.    **Immunity**

"[S]overeign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). The doctrine of sovereign immunity extends to also protect the United States' agents from suit unless there is an express waiver of sovereign immunity by the United States. *United States v. Shaw*, 309 U.S. 495, 500–01 (1940). Thus, "[a] district court lacks jurisdiction to hear a case against the United States or its agents unless sovereign immunity has been expressly waived." *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Engineers*, 279 F. Supp. 3d 846, 860–61 (D. Minn. 2017) (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citation omitted).

Congress, however, may waive the United States' sovereign immunity and "prescribe the terms and conditions on which [the United States] consents to be sued, and the manner in which the suit shall be conducted." *Beers v. State*, 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1857). In 1946, Congress passed the FTCA, "a limited waiver of the United States's sovereign immunity, to permit persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court." *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011) (citation omitted). The FTCA's liability and jurisdiction-conferring language provides that federal district courts have "exclusive jurisdiction" over claims against the United States for money damages for "personal injury or death caused by the negligent or wrongful act or omission" of federal employees

"under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also id.* § 2674.

Here, Plaintiff did not name the United States as a Defendant as required by the FTCA. Instead, Plaintiff brought suit against two corrections officers—Defendants Machutt and Kepp—the Federal Bureau of Prisons, FMC-Rochester, and John and Jane Does # 1–10. (*See* Compl. 1.) The FTCA does not waive their immunity to suit as employees and agencies of the federal government. To the contrary, the FTCA explicitly states that neither federal agencies nor individual federal employees may be sued for allegedly tortious conduct that took place within the scope of their federal employment. 28 U.S.C. §§ 2679(a), (b)(1). Accordingly, this Court finds that Defendants are shielded from Plaintiff's tort claims by sovereign immunity, and therefore recommends that Plaintiff's claims for medical malpractice and personal injury be dismissed.

### ii.    Presentment

Even if Plaintiff's tort claims were not barred against the Defendants in this case by the doctrine of sovereign immunity, they should still be dismissed because Plaintiff failed to comply with the FTCA's requirement that a party present a written claim for relief to the appropriate federal agency prior to filing a lawsuit. "To bring a claim under the FTCA, a party must fully comply with all of the conditions and requirements prescribed by the Act." *Jackson v. Fed. Bureau of Prisons*, No. 06–cv–1347 (MJD/RLE), 2007 WL 843839, at *15 (D. Minn. Mar. 16, 2007) (citing *Bellecourt v. United States*,

994 F.2d 427, 430 (8th Cir. 1993), *cert. denied*, 510 U.S. 1109 (1994)). The FTCA

provides, in relevant part, as follows:

> An action shall not be instituted upon a claim against the United States for
> money damages for injury or loss of property or personal injury or death
> caused by the negligent or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or employment,
> unless the claimant shall have first presented the claim to the appropriate
> Federal agency and his claim shall have been finally denied by the agency
> in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a). In other words, the FTCA states that a party cannot bring a lawsuit

against the United States under the FTCA without first exhausting his or her

administrative remedy, namely, by presenting a written claim for relief to "the

appropriate Federal agency" and receiving a final denial. *See Duncan v. Dep't of Labor*,

313 F.3d 445, 447 (8th Cir. 2002) ("Although the [FTCA] creates several exceptions to

the United States' sovereign immunity, it requires the claimant to first 'present[ ] the

claim to the appropriate Federal agency.'"); *see also McCoy v. United States*, 264 F.3d

792, 794 (8th Cir. 2001) ("An action may not be commenced in federal court under the

FTCA unless the plaintiff has first presented his claim to the appropriate federal agency,

and that claim has been denied."), *cert. denied*, 535 U.S. 1053 (2002). Administrative

exhaustion is a jurisdictional requirement: "[i]n accordance with longstanding Supreme

Court precedent, § 2675(a) is properly viewed as defining the federal courts' jurisdiction

to entertain FTCA suits." *Mader*, 654 F.3d at 807.

Here, the record shows that Plaintiff never presented his claim in writing to the

Bureau of Prisons. (Bush Decl. ¶¶ 27–28, Ex. M.) Thus, this Court finds that it lacks

jurisdiction over Plaintiff's claims for medical malpractice and personal injury due to his failure to exhaust his administrative remedy as required by the FTCA.

### iii. Plaintiff Failed to Comply with State Law

Finally, Defendants argue that in addition to the jurisdictional defects discussed above, Plaintiff's medical malpractice claim should also be dismissed for failure to comply with applicable Minnesota law. Medical malpractice claims under the FTCA "are governed under the substantive law of the state in which the claims arose." 28 U.S.C. § 1346(b); *Tineo v. Fed. Bureau of Prisons*, No. CIV.05-724 ADM/SRN, 2005 WL 1745451, at *2 (D. Minn. July 22, 2005). Here, the events underlying Plaintiff's claim occurred in Minnesota, and thus Minnesota law applies. Medical malpractice claims in Minnesota are governed by Minn. Stat. § 145.682. *Tineo*, 2005 WL 1745451, at *2 (citing *Oslund v. United States*, 701 F. Supp. 710, 713–14 (D. Minn. 1988); *Bellecourt v. United States*, 784 F. Supp. 623, 635–37 (D. Minn. 1992), *aff'd* 994 F.2d 427 (8th Cir. 1993)). That statute requires the plaintiff in a medical malpractice action to furnish two affidavits in support of his claims. One of them, the "expert review affidavit" –

> must be submitted with the complaint and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff . . . .

*Bellecourt*, 784 F. Supp. at 636 (citing Minn. Stat. § 145.682, subd. 3(a)).

The consequence of failing to comply with the affidavit requirement is dismissal of a complaint with prejudice. *Flores v. United States*, 689 F.3d 894, 900 (8th Cir. 2012) (citing Minn. Stat. § 145.682, subd. 6). A plaintiff can avoid dismissal in such

circumstances only where: "(1) expert testimony is not needed to establish negligence; or (2) if the plaintiff shows excusable neglect in failing to timely serve the affidavits." *Flores*, 689 F.3d at 900 (citing Minn. Stat. § 145.682 subds. 2, 4; *Stern v. Dill*, 442 N.W.2d 322, 324 (Minn. 1989)).

Here, Plaintiff did not furnish an expert affidavit with his Complaint as required by § 145.682. The record does indicate that Plaintiff received care for his injury (*see* Bush Decl. ¶ 16, Ex. C at 2), but Plaintiff alleges that the care was inadequate and that his back is broken. (Compl. 5.) This Court finds that the diagnosis and treatment of Plaintiff's back injury are not subjects that a layperson is competent to assess – expert testimony would be necessary. This Court also notes that Plaintiff has not argued that expert testimony is unnecessary in this case, or that his failure to provide the affidavit was due to excusable neglect. Accordingly, because Plaintiff has failed to provide the affidavit required by Minn. Stat. § 145.682, subd. 3(a), this Court recommends that his claim for medical malpractice be dismissed.

### C.    Plaintiff's Deliberate Indifference Claim

Next, this Court observes that Plaintiff does not explicitly plead a claim for deliberate indifference to his medical needs. (*See* Compl. 3 (asserting claims for personal injury and medical malpractice).) Plaintiff does, however, allege that "[a]s a direct and proximate result of the defendants' deliberate indifference to my serious medical needs, I was made to fall and severely injure my back." (*Id.* at 5.) Defendants argue that to the extent that Plaintiff seeks to pursue a *Bivens* claim against the named Defendants based on an alleged violation of his Eighth Amendment rights, that claim is barred by the

14

doctrine of sovereign immunity. (Mem. in Supp. 11–13); *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (holding that individuals acting under color of federal law may be held liable for monetary damages resulting from injuries suffered as a result of their violation of a plaintiff's constitutional rights). Defendants also argue that any *Bivens* claim against the Doe Defendants should be dismissed for failure to state a claim. (Mem. in Supp. 13–14.)

### i.    Sovereign Immunity

As discussed above, as a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute. *Shaw*, 309 U.S. 495, 500–01. "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Brown v. United States*, 151 F.3d 800, 803 (8th Cir. 1998), quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Congress has not waived the sovereign immunity of the United States Government, or its agencies, for claims that their employees have violated the Constitution. *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) ("It is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."). "A Federal prisoner in a BOP facility may bring a *Bivens* claim against an individual officer . . . but 'the prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP . . . his only remedy lies against the individual.'" *Jackson v. Fed. Bureau of Prisons*, No. CIV. 06-1347 MJD/RLE, 2007 WL 843839, at *8 (D. Minn. Mar. 16, 2007) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001)).

Here, any *Bivens* claim Plaintiff may wish to bring against FMC-Rochester or the the Bureau of Prisons is plainly barred by sovereign immunity. *Jackson*, 2007 WL 843839, at *8. The remaining question then is whether Plaintiff sued the named Defendants in this action in their official or individual capacity. The Eighth Circuit has long held that "'[i]f a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims.'" *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quoting *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)); *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity."). This Court has carefully reviewed Plaintiff's Complaint in this matter, and it does not contain any indication of whether he sought to sue the named Defendants in their official or individual capacity. Accordingly, this Court presumes that the Complaint only contains official-capacity claims, which are precluded by sovereign immunity, and therefore recommends that Plaintiff's *Bivens* claim be dismissed.

### ii. Failure to State a Claim Against the Doe Defendants

This Court now turns to the Government's argument that Plaintiff failed to state a *Bivens* claim against the Doe Defendants. The law requires that in order to survive a motion to dismiss, Plaintiff's Complaint must allege facts that, accepted as true, "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Here, Plaintiff's Complaint alleges no facts at all relating to

any Doe Defendants. Accordingly, this Court recommends that Plaintiff's *Bivens* claim against the Doe Defendants be dismissed.

### D.    Plaintiff Did Not Exhaust Administrative Remedies

Defendants argue in the alternative that even if Plaintiff's claims should not be dismissed for lack of jurisdiction for failure to state a claim, they should still be dismissed because Plaintiff failed to exhaust his administrative remedies before filing the present action.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). This is because the purpose of the PLRA is to reduce the quantity of prisoner lawsuits by giving prison administration an opportunity to take corrective action in response to a prisoner's grievance, thereby avoiding the need for court intercession. *Id.* at 524–25. Prisoners must exhaust administrative remedies even where the relief sought, such as monetary damages, cannot be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). When a plaintiff fails to exhaust the administrative remedies available to him before filing a lawsuit, "dismissal is mandatory." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

In *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016), the Supreme Court clarified that there are no "judge-made" exceptions, such as good cause, to the PLRA's exhaustion requirement. Instead, a prisoner must exhaust all "available" remedies, which the Court narrowly defined as all remedies that are "capable of use." *Id.* at 1858. *Ross* emphasized that administrative remedies are "unavailable" only under three limited circumstances which "will not often arise": (1) when the process cannot be completed because it is a "dead end," with prison officials "unable or consistently unwilling" to provide any relief; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) when prison officials thwart the inmate through "machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Here, the Bureau of Prisons ("BOP") has a tiered Administrative Remedy Program for the handling of inmate grievances. *See* 28 C.F.R. §§ 542.10–542.19; (Doc. No. 37, Bush Decl. ¶¶ 5–6). The first step involves an informal attempt to resolve the problem with prison staff. 28 C.F.R. § 542.13(a); (Bush Decl. ¶ 7). If an inmate is unable to informally resolve his grievance, he may proceed to the second step – filing a formal Request for Administrative Remedy at the institution in which the inmate is incarcerated. (*Id.* (citing 28 C.F.R. § 542.14).) If, after receiving a response, an inmate is still dissatisfied, he may appeal to the Regional Director within twenty calendar days of the date the Warden signed the response by filing a Regional Office Administrative Remedy Appeal. (*Id.* (citing 28 C.F.R. § 542.15(a)).) If dissatisfied with the Regional Director's response, the inmate can appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C. (*Id.*) An inmate may not raise on appeal an

issue not raised in a lower-level filing. (*Id.* (citing 28 C.F.R. § 542.l 5(b)(2)).) Appeal to the Office of the General Counsel is considered the final administrative appeal. (*Id.* ¶ 9 (citing 28 C.F.R.§ 542. l 5(a)).) The Administrative Remedy Program "applies to all inmates in institutions operated by the Bureau of Prisons." (*Id.* ¶ 10 (citing 28 C.F.R. § 542.10(b)).)

The BOP keeps electronic records related to administrative complaints filed by inmates under the Bureau Administrative Remedy Program in a program called SENTRY. (*Id.* ¶ 11.) Here, the record reflects that during his incarceration, Plaintiff has attempted to file eleven administrative remedies. (*Id.* ¶ 15, Ex. B.) Only one of those, however, concerns the present matter. On or about October 30, 2019, Plaintiff filed Administrative Remedy 995532-F1 at the institutional level. (*Id.* ¶ 16, Ex. B at 2, Ex. C.) Therein, Plaintiff complained that on September 3, 2019, he was placed in an SHU cell and that the air hose for his oxygen concentrator was crushed under the closed door. (*Id.*, Ex. C at 1.) Plaintiff explained that when he pulled on the air hose, it snapped, causing him to fall backward and injure his back. (*Id.*) Plaintiff stated that he believed his back was broken and requested a C/T scan. (*Id.*)

In response, on December 13, 2019, the warden wrote to Plaintiff that "[a] review of your electronic medical record found you were evaluated several times following your fall." (*Id.*, Ex. C at 2.) The warden explained that Plaintiff's medical record demonstrates that while providers performed physical exams and created treatment plans for Plaintiff, "[t]here were no acute findings on an x-ray that was performed on September 5, 2019." (*Id.*) The warden noted that a C/T scan was nonetheless ordered due to a multilobulated

19

calcific density found on the x-ray image. (*Id.*) The warden's letter also states that if Plaintiff was dissatisfied with that response, he could file an appeal. (*Id.*) Plaintiff did not subsequently refile or seek to appeal Administrative Remedy 995532-F1 at any level.[5] (*Id.* ¶ 17, Ex. B.)

The record in this matter reflects that Plaintiff failed to exhaust his administrative remedies. While Plaintiff filed a single administrative remedy related to the events of September 3, 2019, and Plaintiff's alleged back injury, he failed to pursue that remedy to exhaustion. (*Id.* ¶¶ 16–17, Ex. B at 2, Ex. C.) Moreover, Plaintiff has not demonstrated that any of the exceptions to the PLRA's exhaustion requirement apply in this case, *see Ross*, 136 S. Ct. at 1859–60, and as a consequence, Plaintiff's claims are subject to dismissal.

For all the foregoing reasons, this Court recommends that Defendants' Motion to Dismiss be granted, and Plaintiff's Complaint be dismissed.

### ORDER

1.    Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike (Doc. No. 42) is **DENIED**.

---

[5]    Three of Plaintiff's subsequent Administrative Remedy filings did concern complaints he had concerning his medical care, but none of those related to the back injury alleged here. (*See* Bush Decl., Exs. H, I, K.)

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Defendants' Motion to Dismiss (Doc. No. 32) be **GRANTED**;

2.    Plaintiff's Complaint (Doc. No. 1) be **DISMISSED**; and

3.    Judgment be entered accordingly.


Dated: January 13, 2021                              *s/ Becky R. Thorson*
                                                     BECKY R. THORSON
                                                     United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).